Joseph J asp an, J.
The defendants move to dismiss the indictment against them upon the ground that it is based in a material part upon privileged communications between a certified social worker and clients in violation of CPLR 4508 and for the additional reason that, in any event, the defendants did not receive any moneys to which they would not otherwise have been entitled. ¡
The defendants, husband and wife, were on public assistance from August 1, 1968 to August 31, 1974 and then from September 29, 1975 to the date on which the case was presented. During that period they received income and shelter allowances.
It appears that on January 17, 1973 the defendants purchased premises 209 West Fourth Street, Deer Park, and took title under the assumed names of William P. Murphy and Patricia Murphy and that on April 27, 1974 they executed a deed to the same property to their son, William F. O’Gorman, III. During this period of time and thereafter, they represented to the Department of Social Services by appropriate application and recertification forms that they were tenants in this home and that the true owners were William and Patricia Murphy. Information as to the true ownership of the property was withheld from the Department of Social Services.
By reason thereof, the defendants were indicted for the crime of grand larceny in the second degree and for a violation of section 145 of the Social Services Law of the State of New York, deliberate concealment of a material fact by a welfare recipient.
I find that the evidence presented was legally sufficient to support the indictment as to each of the counts unless the privilege claimed precludes the admission of some of that testimony.
While it is not certain from a reading of the record that any of the persons who testified before the Grand Jury were, in fact, certified social workers, the reference in the statute to "persons working for the same eriiployer” dictates a ruling of the issue presented without necessarily holding that the stat *541 ute is, in any event, applicable to the events referred to herein.
CPLR 4508 provides in its relevant portions as follows:
"Social worker.
"A person duly registered as a certified social worker under the provisions of article one hundred fifty-four of the education law shall not be required to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person working for the same employer as the certified social worker or for the certified social worker be allowed to disclose any such communication or advice given thereon; except
"1. that a certified social worker may disclose such information as the client may authorize;
"2. that a certified social worker shall not be required to treat as confidential a communication by a client which reveals the contemplation of a crime or harmful act.” (Emphasis added.)
In essence, the defendants are claiming that the prohibition of this statute protects them from the introduction of evidence which might show that they were perpetrating a fraud upon the Department of Social Services. A narrow reading of the statute would indicate that the exception contained in subdivision 2 is limited to communications which reveal the contemplation of a crime or harmful act as distinguished from a communication which in itself involves one of transactional elements in the commission of a crime. If the statute were to be so interpreted, the prosecution of many cases for welfare fraud would be rendered impossible, especially when it is based upon misrepresentation made by the client to the department in connection with his application for or recertification of eligibility to insure the continuance of public assistance.
But the language is not that clear or the words so precise as to permit of only one interpretation. It cannot be assumed that the Legislature intended to protect the applicant from the consequences of his fraudulent representations or that they in any way intended to repeal or modify the provisions of section 145 of the Social Services Law, which reads in part as follows: "1. Any person who by means of a false statement or representation, or by deliberate concealment of any material *542 fact, or by impersonation or other fraudulent device, obtains or attempts to obtain, or aids or abets any person to obtain public assistance or care to which he is not entitled, or does any wilful act designed to interfere with the proper administration of public assistance and care, shall be guilty of a misdemeanor, unless such act constitutes a violation of a provision of the penal law of the ¡state of New York, in which case he shall be punished in accordance with the penalties fixed by such law. Failure on the part of a person receiving public assistance or care to notify the social services official granting such assistance or care of the receipt of money or property or income from employment or any other source whatsoever, shall, upon the cashing of a public assistance check by or on behalf of such person after the receipt of such money, or property, or income, constitute presumptive evidence of deliberate concealment of a material fact.”
The more appropriate interpretation is that CPLR 4508 is subject to the same rules in the area of criminal activity which apply to the other statutes relating to confidential relationships. The principle was set forth in People v Farmer (194 NY 251, 269) in which the court wrote: "[T]he seal of personal confidence can never be , used to cover a transaction which is in itself a crime.”
In People v Watkins (89 Misc 2d 870) I held that the law creating the confidential communication between husband and wife does not extend to conversations which advance criminal activity.
The Federal, State and municipal governments are united in their effort to prevent abuse of the public assistance statutes and to punish those who make fraudulent representations to obtain benefits.
If there is any doubt as to the ihtent of CPLR 4508 (subd 2) it must be resolved by the rules of construction which are enunciated in section 141 of Book 1, Statutes, McKinney’s Consolidated Laws of New York. The rule of construction is set forth which reads as follows:
"It is a fundamental rule of statutory interpretation that of two constructions which might be placed upon an ambiguous statute one which would cause objectionable consequences is to be avoided. Stated in another way, the rule is that the construction to be adopted is the, one which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief, or absurdity. The Legislature is presumed to *543 have intended that good will result from its laws, and a bad result suggests a wrong interpretation.
"Thus, while consequences cannot alter statutes, they may help fix their meaning, and are important as a clue to the meaning; and courts are not bound to close their eyes to consequences. Where possible a statute will not be construed so as to lead to evil, unjust, oppressive, or absurd consequences or to self contradiction. Nor will courts impute to lawmakers a futile and frivolous intent.”
I also hold that the defendants waived any claim of privilege with respect to information given to establish or maintain eligibility. The representations by each defendant were subject to investigation by a social services official (Social Services Law, § 132) to determine the need for public assistance. In making application for public assistance, the defendants consented to such an investigation and the use of information supplied by them. In fact, the recertification documents attributed to the defendant contained the following legend: "I have signed this application and given the information required to the Department of Social Services as the basis for giving me Public Assistance. I swear (or) affirm that the information given on this application form is true and correct. I understand that by signing this application/certification form, I consent to any investigation made by the Department of Social Services to verify or confirm the information I have given or any other investigation made by them in connection with my request for Public Assistance. I agree to inform the agency promptly of any change in my needs, income, property, living arrangements or address to the best of my knowledge and belief. I further swear (or) affirm that I □ am □ am not receiving Public Assistance and that I have not given any of my property to anyone to get Public Assistance. I understand that the law provides for fine or imprisonment, or both, for a person found guilty of obtaining assistance by hiding facts or not telling the truth. If additional information should be requested, I will provide it.”
The motion to dismiss the indictment is denied.